#27020-aff in pt, rev in pt & rem-JKK

**2015 S.D. 35**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

| | |
|---|---|
| BERKLEY REGIONAL SPECIALTY INSURANCE COMPANY, | Plaintiff and Appellee, |
| v. | |
| DOWLING SPRAY SERVICE; TROY DOWLING; SCOTT DOWLING; KELSEY SEED, AG SERVICE LLC, FARM BUREAU MUTUAL INSURANCE COMPANY, | Defendants, |
| and | |
| GREAT WEST CASUALTY COMPANY, | Defendant and Appellee, |
| and | |
| JAMES SEILER and KIMBERLY SEILER, | Defendants and Appellants. |

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
BEADLE COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JON R. ERICKSON
Judge
\* \* \* \*

MICHAEL J. SCHAFFER
PAUL H. LINDE of
Schaffer Law Office, Prof., LLC
Sioux Falls, South Dakota

Attorneys for plaintiff and appellee Berkley Regional Specialty Insurance Company.

\* \* \* \*

ARGUED ON MARCH 25, 2015

OPINION FILED **05/20/15**

ROBERT B. ANDERSON of
May, Adam, Gerdes & Thompson
Pierre, South Dakota

Attorneys for defendant and
appellee Great West Casualty
Company.


JOHN W. BURK of
Thomas, Braun, Bernard & Burke
Rapid City, South Dakota

        and

MATTHEW J. KINNEY of
Kinney Law Office
Spearfish, South Dakota

Attorneys for defendants
and appellants.

#27020

KONENKAMP, Retired Justice

[¶1.]      This appeal addresses the remaining insurance coverage questions arising from the intersection collision described in *Berkley Regional Specialty Insurance Company v. Dowling Spray Service*, 2015 S.D. 9, 860 N.W.2d 257.  In that case, we ruled that the policy insuring the owner of the crop sprayer provided no coverage.  Here, we determine whether coverage is afforded by either of the two policies insuring the driver of the crop sprayer.  The circuit court ruled that neither policy created a duty to defend and indemnify the driver.

## Background

[¶2.]      Troy Dowling operates Dowling Spray Service, a crop-spraying business and sole proprietorship in Beadle County, South Dakota.  As part of his business, Troy owned a JD 4830 sprayer.  This sprayer is a scheduled item on his commercial general liability insurance policy through Berkley Regional Insurance Company.  Troy also had a commercial automobile insurance policy with Great West Casualty Company.  On July 1, 2010, Troy lent his sprayer to his uncle, Scott Dowling.  In return, Troy borrowed a John Deere 4720 self-propelled sprayer (Sprayer), owned by Scott's business, Dowling Brothers Partnership.

[¶3.]      On July 11, 2010, Troy was driving the John Deere 4720 Sprayer to one of his customer's fields.  At the intersection of Highway 27 and 218th Street in Beadle County, the Sprayer collided with a motorcycle driven by James Seiler.  Kimberly Seiler was a passenger.  The Seilers were both seriously injured and sought damages.

-1-

[¶4.]    In circuit court, Berkley successfully obtained summary judgment declaring that it had no duty to defend or indemnify Troy. With regard to Great West's policy, the court conducted a trial. Sarah Hanson, Vice President of Great West's Midwestern Region Underwriting, testified that "We are not . . . in the business of insuring agricultural farm machinery. We insure over-the-road trucking equipment." The court found that the Sprayer "does not meet the definition of a 'motor vehicle' as defined by the policy" and neither "does it fit within the business scheme of Great West." Accordingly, Great West obtained a declaratory judgment that it had no duty to defend or indemnify Troy.

[¶5.]    In this appeal, the Seilers assert that the circuit court erred in granting declaratory judgements for Berkley and Great West.

### 1. Berkley's Policy

[¶6.]    The circuit court ruled that Berkley had no duty to defend or indemnify Troy for the July 11, 2010 accident because Troy's use of the John Deere 4720 Sprayer loaned to him by Dowling Brothers Partnership fell within Berkley's policy definition of an "auto," for which commercial general liability coverage is specifically excluded. But the Seilers argue that even if the Sprayer is an "auto," the exception to the exclusion applies. In their view, the Sprayer would have qualified as "mobile equipment" (which is not excluded from coverage) if the Sprayer were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in South Dakota.

[¶7.]    In Section I – Coverages (Insuring Agreement), the policy provides that Berkley "will pay those sums that the insured becomes legally obligated to pay as

damages because of 'bodily injury' or 'property damage' to which this insurance applies." Excluded from coverage, however, is "'[b]odily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, '*auto*' or watercraft owned or operated by or rented or loaned to any insured." Section I – Coverages (Exclusions) (emphasis added). An "auto" is defined as

> a. A land motor vehicle . . . designed for travel on public roads, including any attached machinery or equipment; or
>
> b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.
>
> However, "auto" does not include "mobile equipment".

Section V – Definitions. It cannot be disputed that the Sprayer is designed for travel on public roads. It has four wheels, is self-propelled, has headlights, taillights, turn signals, and other components similar to road-ready vehicles. Moreover, the circuit court found that the Sprayer is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in South Dakota. Thus, the Sprayer meets both policy definitions of an "auto."

[¶8.] Yet the definition of "auto" specifically excludes "mobile equipment," and, therefore, we must look to the definition of "mobile equipment." "Mobile equipment" is defined as

> any of the following types of land vehicles, including any attached machinery or equipment:
>
> > a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;
> > . . .
> > f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

. . .

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

Section V – Definitions.

[¶9.]      The Sprayer arguably meets the definition of "mobile equipment" in one of two ways. First, it fits within subsection a. because it is farm machinery or a vehicle designed for use *principally* off public roads. Although the Sprayer can be used on and is equipped for use on public roads, its *principal* use is off public roads — spraying crops. Second, if the Sprayer does not meet subsection a., it is nonetheless "mobile equipment" under subsection f., because it is a vehicle "not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo[.]" The Sprayer is maintained for spraying crops, which is a purpose other than the transportation of persons or cargo.

[¶10.]      Our review cannot end here, however. The last paragraph of the definition of "mobile equipment" provides that "any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged" will be "considered '*autos*'." (Emphasis added.) In the summary judgment proceeding, no one disputed that the Sprayer is subject to a compulsory or financial responsibility law in South Dakota.

Therefore, although the Sprayer meets the definition of "mobile equipment" under either subsection a. or f., the Sprayer must be considered an "auto."

[¶11.]    Returning, then, to the provision that specifically excludes coverage for damages arising out of the use of any "auto," the Seilers contend that the exception to the exclusion applies.  The exception states,

> This exclusion does not apply to:
>
>> . . .
>>
>>> (5) 'Bodily injury' or 'property damage' arising out of:
>>>
>>>> (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or
>>>>
>>>> (b) the operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

Section I – Coverages (Exclusions).  The Seilers argue that the claims against Troy for the July 11, 2010 accident arose out of his operation of the Sprayer, which Sprayer would qualify as "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle law in South Dakota.  Berkley, on the other hand, argues that the exception is not implicated because the accident arose out of "the use of the vehicle as a vehicle" and not the operation of the spraying machinery or equipment.

[¶12.]    The policy language is unambiguous.  For the exception to the exclusion to apply, the bodily injury or damage must arise out of the operation of the *machinery or equipment* that is *attached* to either (1) the land vehicle that would qualify as "mobile equipment," or (2) to a self-propelled vehicle with certain

types of machinery or equipment listed in subsection f.(2) or f.(3) of the definition of "mobile equipment." Here, the accident did not arise out of Troy's use of the machinery or equipment *attached* to the Sprayer, but rather from the operation of the land vehicle or self-propelled vehicle that would qualify as mobile equipment.

[¶13.] Berkley's policy specifically excludes coverage for bodily injury and damage arising out of the use of an "auto," and the Sprayer meets the policy's definition of an "auto." Because no exception to the exclusion applies, the circuit court properly granted Berkley summary judgment declaring that it had no duty to defend or indemnify Troy for any claims from the July 11, 2010 accident.

### 2. Great West's Policy

[¶14.] The circuit court first denied Great West summary judgment, ruling that there was a material issue of fact in dispute whether Great West had a duty to defend and indemnify Troy for the July 11, 2010 accident. It based its decision in part on its previous finding that the Sprayer "is required to be licensed and insured under South Dakota law." Yet, after trial, the court issued a finding of fact that the Sprayer was "*not* subject to compulsory or financial responsibility laws or other motor vehicle insurance laws of the State of South Dakota." (Emphasis added.) The court further concluded that the Sprayer was "mobile equipment" as defined in Great West's policy, for which commercial automobile liability coverage is specifically excluded. Its ruling was based in part on testimony from Great West that it insures over-the-road semi-tractor and trailer businesses, not farm equipment, and that Great West would have declined to provide coverage for the Sprayer had Troy sought insurance coverage.

[¶15.]    On appeal, the Seilers contend that the circuit court founded its decision on three fundamental errors.  First, the court erred when it ruled that the Sprayer is *not* subject to a compulsory or financial responsibility law or other motor vehicle insurance law in South Dakota.  Second, the court erred when it went outside the unambiguous terms of the policy and considered testimony from Great West's representative.  Third, the court ignored the plain and ordinary policy language when it ruled that the Sprayer is not a covered "auto."

[¶16.]    In Section I – Covered Autos (Description of Covered Auto Designation Symbols), Great West's policy provides that it insures only designated autos.  In this case, the designation for hired autos is implicated.  That provision states that Great West insures "only those 'autos' you lease, hire, rent or borrow."  The policy further states that "[i]f Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered 'autos' for Liability Coverage: . . . 5. Any 'auto' that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged that would otherwise qualify as 'mobile equipment'."  Section I – Covered Autos (Certain Trailers, Certain Leased Autos, Mobile Equipment and Temporary Substitute Autos).

[¶17.]    Section II – Liability Coverage provides that Great West "will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'."  An "auto" is defined as:

> 1. A land motor vehicle, "trailer" or semitrailer designed for travel on a public road; or

2. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

Section VI – Definitions.  The Sprayer is an "auto."  It is designed for travel on public roads based on the fact that it has four wheels, is self-propelled, has headlights, taillights, turn signals, and other components similar to road-ready vehicles.

[¶18.]     Yet the definition of "auto" specifically excludes "mobile equipment." "Mobile equipment" is defined as

any of the following types of land vehicles, including any attached machinery or equipment:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

. . .

6. Vehicles not described in Paragraph 1., 2., 3. or 4. above maintained primarily for purposes other than the transportation of persons or cargo.  However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

. . .

c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.  Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

Section VI – Definitions.

[¶19.] Although "farm machinery" is not defined in the policy, the circuit court found as fact that the Sprayer is "farm machinery." This finding can hardly be disputed. But even if not farm machinery, it is nonetheless a vehicle designed for use principally off public roads — its purpose is to spray crops. Therefore, the Sprayer meets the policy definition of "mobile equipment."

[¶20.] Yet the last paragraph in the definition of "mobile equipment" declares that "mobile equipment" does not include a land vehicle subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. This language is nearly identical to the wordage in Berkley's policy, in which case the circuit court specifically ruled that the Sprayer is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in South Dakota. Also, in earlier denying Great West's motion for summary judgment, the court again concluded that the Sprayer "is subject to South Dakota's financial responsibility law." But in its findings of fact and conclusions of law after trial, the circuit court made the opposite ruling and held that the Sprayer is *not* subject to a compulsory or financial responsibility law or other motor vehicle insurance law in South Dakota. We can find no support for the court's divergent conclusion.* The Sprayer is subject to South Dakota's compulsory or financial

---

*       *See generally* SDCL 32-35-2; SDCL 32-5-1,-2. The John Deere 4720 Sprayer was owned by a commercial entity, Dowling Brothers Partnership. According to the South Dakota Department of Transportation Commercial & Agricultural Vehicle Handbook:

> Self-propelled fertilizer or pesticide applicators, if used by a farmer for his own farming operation, are exempt from licensing and titling. However, if these units are used by a commercial

(continued . . .)

responsibility laws, and, therefore, is an "auto" under the clear and unambiguous terms of the definition of "mobile equipment."

[¶21.] We return, then, to the provision defining the scope of coverage, which specifically provides coverage for an "auto." Great West argues that even if the Sprayer is considered an "auto" because it is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in South Dakota, the policy exclusion provision applies. The Exclusion to the Liability Coverage section provides that

> [t]his insurance does not apply to any of the following:
>
> . . .
>
> **9. OPERATIONS**
>
> "Bodily injury", "property damage" . . . arising out of the operation of:
>
> . . .
>
> > b. Air compressors, pumps and welding, including spraying . . . servicing equipment; or
> >
> > c. Machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of 'mobile equipment' if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

Great West focuses on subsection c., specifically on the fact that the Sprayer "would qualify under the definition of 'mobile equipment' if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged."

_____

(. . . continued)

> entity, they must be titled and licensed under the noncommercial vehicle fee schedule listed in Table 4.

[¶22.] As we stated in *Ass Kickin Ranch, LLC v. North Star Mutual Insurance Company*, "'[T]he scope of coverage of an insurance policy is determined from the contractual intent and the objectives of the parties as expressed in the contract.'" 2012 S.D. 73, ¶ 9, 822 N.W.2d 724, 727 (quoting *St. Paul Fire & Marine Ins. Co. v. Schilling*, 520 N.W.2d 884, 887 (S.D. 1994)) (alteration in original). We interpret contract language according to its plain and ordinary meaning and will not "make a forced construction or a new contract for the parties." *Stene v. State Farm Mut. Auto. Ins. Co.*, 1998 S.D. 95, ¶ 14, 583 N.W.2d 399, 402 (quoting *St. Paul Fire & Marine Ins. Co.*, 520 N.W.2d at 887) (internal quotation mark omitted). Moreover, "'[w]hen an insurer seeks to invoke a policy exclusion as a means of avoiding coverage, the insurer has the burden of proving that the exclusion applies.'" *Opperman v. Heritage Mut. Ins. Co.*, 1997 S.D. 85, ¶ 4, 566 N.W.2d 487, 489 (quoting *Am. Family Mut. Ins. Co. v. Purdy*, 483 N.W.2d 197, 199 (S.D. 1992)).

[¶23.] Here, the plain and ordinary meaning of the policy exclusion is that the accident must *arise* out of the *operation* of the *machinery or equipment* and not merely the operation of the land vehicle itself. The exclusion, read as a whole, provides that "[t]his insurance does not apply to . . . 'Bodily injury', 'property damage' . . . arising out of the *operation* of: . . . *Machinery* or *equipment* <u>that is on, attached to, or part of</u>, a land vehicle that would qualify under the definition of 'mobile equipment' . . . ." The accident on July 11, 2010 arose, not out of the operation of the machinery or equipment attached to the Sprayer, but from the operation of the land vehicle — the Sprayer. The circuit court was wrong to conclude otherwise. Moreover, the court erred when it relied on testimony from a

Great West employee to declare the intent of the Great West's insurance coverage under the policy. Extrinsic evidence must not be considered when the language of a contract is unambiguous. *Vander Heide v. Boke Ranch, Inc.*, 2007 S.D. 69, ¶ 37, 736 N.W.2d 824, 835. No one contends this policy is ambiguous.

[¶24.] Great West's policy plainly states that it will pay damages for bodily injury and property damage arising out of the use of a covered auto. A covered auto includes an auto Troy borrows. Coverage applies to a vehicle subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where the land vehicle is licensed or principally garaged when that land vehicle would otherwise qualify as "mobile equipment." Because a covered auto is unambiguously defined to include the Sprayer as it was used at the time of the collision, and Great West has failed to prove that a policy exclusion applies, Great West has the duty to defend and indemnify Troy for claims related to the July 11, 2010 accident.

[¶25.] We affirm the judgment for Berkley Regional Insurance Company and reverse and remand the judgment for Great West Casualty Company.

[¶26.] GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and KERN, Justices, concur.

[¶27.] WILBUR, Justice, deeming herself disqualified, did not participate.