#27841, #27842-r-GAS
**2016 S.D. 85**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

WESTERN NATIONAL MUTUAL
INSURANCE COMPANY,                            Plaintiff and Appellee,

    v.

GATEWAY BUILDING SYSTEMS, INC.,               Defendant and Appellant,

    and

DAKOTA MILL & GRAIN, INC.,                     Defendant.


* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
STANLEY COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JOHN L. BROWN
Judge
* * * *

JAMES E. MOORE
JORDAN J. FEIST of
Woods Fuller Shultz & Smith P.C.
Sioux Falls, South Dakota                     Attorneys for plaintiff and
                                        appellee.


TERRY G. WESTERGAARD of
Bangs, McCullen, Butler,
  Foye & Simmons, LLP
Sioux Falls, South Dakota                     Attorneys for defendant and
                                        appellant.

* * * *

CONSIDERED ON BRIEFS
ON NOVEMBER 8, 2016
OPINION FILED **11/30/16**

#27841, #27842

SEVERSON, Justice

[¶1.]     Western National Mutual Insurance Company filed a complaint for declaratory judgment against Gateway Building Systems, Inc. The circuit court granted summary judgment in favor of Western National, finding that several exclusions in the insurance agreement between Western National and Gateway applied to defeat coverage for an underlying suit between Gateway and Dakota Mill & Grain, Inc. Gateway appeals. We reverse and remand.

**Background**

[¶2.]     Dakota Mill & Grain, Inc., contracted with Gateway Building Systems, Inc., for the construction of three 136,611 bushel grain bins, a top fill system (overhead fill conveyors), and a reclaim system (reclaim conveyors). The reclaim and fill conveyor systems were to be integrated with a pre-existing leg and support tower. The new grain bins were built in the same location where Dakota Mill previously had four 43,000 bushel bins. Gateway contracted to provide the steel, concrete, labor, anchors, and rebar for the project, but it was not responsible to pay for site preparation or fill gravel as part of its contract. The parties dispute whether Gateway acted as a general contractor for the overall project.

[¶3.]     B & B Excavation performed excavation on the site of the grain bins. BMS Concrete, a subcontractor of Gateway was involved in locating, staking, and pouring the bin foundations. However, Gateway conceded that its employees "staked the center point of the first bin." Construction was substantially completed on or about July 1, 2009.

[¶4.] After Dakota Mill had filled the bins with grain, each of the three bins began to tip towards the west and became unstable. Local engineers determined that the bins were in danger of imminent collapse, forcing Dakota Mill to empty them and relocate or short sell the grain that had been placed in the bins. Dakota Mill decided to level the bins using a process of "compaction grouting." The support tower and overhead grain conveyor had pulled away from the bins requiring those to be taken down and/or reattached. Finally, the overhead grain conveyor system did not perform as promised.

[¶5.] Dakota Mill filed suit against Gateway, alleging that Gateway negligently performed its engineering and surveying services, breached implied warranties, and breached its contract. Gateway purchased a Commercial General Liability insurance policy from Western National Mutual Insurance Company, which was in effect during the period at issue. Accordingly, Western National provided Gateway with a defense in the action filed by Dakota Mill, but it issued a reservation of rights letter. The underlying liability action is still pending in circuit court.

[¶6.] This coverage dispute followed, and Western National filed a complaint for declaratory judgment on March 1, 2011, regarding coverage under the policy. On July 10, 2014, Western National moved for summary judgment. The circuit court held a hearing on the motion on August 11, 2014. From the record, no further activity appeared to take place on the case until March 2015 when Western National submitted a supplemental brief in support of its motion for summary judgment. An attorney for Western National submitted an affidavit in support of

the supplemental brief. The affidavit attached a "true and correct copy of [an] expert report produced by Dakota Mill and Grain Company, dated December 2, 2014, and later provided to Western National[.]" The circuit court granted summary judgment in favor of Western National on March 28, 2016. In its memorandum opinion, the court relied upon the expert report to find that the policy between Gateway and Western National provided an initial grant of coverage but that exclusions defeated coverage. Gateway appeals the circuit court's grant of summary judgment. On appeal to this Court, Gateway alleges that the court erred by determining that exclusions apply and further alleges that there are genuine issues of material fact precluding summary judgment on those two exclusions. Through notice of review, Western National alleges that the court erred by not determining that an additional exclusion bars coverage.

## Standard of Review

[¶7.]        We review a circuit court's grant of summary judgment to determine whether genuine issues of material fact exist and whether the law was applied correctly. *Swenson v. Auto Owners Ins. Co.*, 2013 S.D. 38, ¶ 12, 831 N.W.2d 402, 406. "When the material facts are undisputed, this Court's review 'is limited to determining whether the trial court correctly applied the law.'" *Id.*, 831 N.W.2d at 407 (quoting *De Smet Ins. Co. of S.D. v. Pourier*, 2011 S.D. 47, ¶ 4 n.1, 802 N.W.2d 447, 448 n.1).

## Analysis

[¶8.]        "The interpretation of an insurance policy is a question of law, reviewed de novo." *Id.* ¶ 13. "The existence of the rights and obligations of parties

to an insurance contract are determined by the language of the contract, which must be construed according to the plain meaning of its terms." *Id.* (quoting *Biegler v. Am. Family Mut. Ins. Co.*, 2001 S.D. 13, ¶ 20, 621 N.W.2d 592, 598-99).

[¶9.]    The policy between Gateway and Western National provides that Western National "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." It further states that "this insurance applies to 'bodily injury' and 'property damage' only if: (1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory[.]'" The parties are not disputing that an initial grant of coverage exists because "property damage" caused by an "occurrence" has taken place. They dispute the applicability of the exclusions and whether there were material facts in dispute that prevented summary judgment.

[¶10.]    First, we consider the circuit court's determination that the "damage to your work" exclusion (Exclusion l) applies. Exclusion l provides:

> Damage to Your Work:
>
> "Property damage" to "your work" arising out of it and included in the "products-completed operations hazard".
>
> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

[¶11.]    Gateway maintains that the court erred by determining that Exclusion l applied because there were material facts in dispute. "A disputed fact is not 'material' unless it would affect the outcome of the suit under the governing substantive law in that a reasonable jury could return a verdict for the nonmoving

party." *Robinson v. Ewalt*, 2012 S.D. 1, ¶ 10, 808 N.W.2d 123, 126 (quoting *Gul v. Ctr. for Family Med.*, 2009 S.D. 12, ¶ 8, 762 N.W.2d 629, 633). Gateway disputed the cause of the bins' movement, asserting that it could have been due to faulty workmanship of subcontractors, which falls within the exception to Exclusion l for work performed on their behalf by a subcontractor. The faulty work that Gateway alleges could have caused the bin failure includes inadequate fill soil and bin placement. It contends that the western edges of the bins were located off the fill section of the prepared site. Gateway conceded that it had staked the center point of the first bin, but it disputed that it staked the location of the second and third bins. In answers to interrogatories, Gateway asserted that BMS Concrete was involved in the staking, locating, or pouring the foundations of the bins. Gateway also disputed that the proper "engineered fill" was used on the site of the foundations. B & B Excavation was responsible for the excavation work. In his deposition, Gateway's concrete foreman, Nathan Hedtke, stated that the B & B person doing the compaction of the site, Daryl Beck, "was just having a heck of a time. He [Daryl] would get compaction in one area and then not in the next, and then if he went over it again sometimes he would get it and sometimes the next time it would get worse. He just was having a hard time figuring out how to pack the fill." Thus, Gateway asserts that a genuine dispute of material fact exists "as to whether the cause of the bin shifting could have been due to the fill soils or the bin placement."

[¶12.]     Western National asserts that Dakota Mill's alleged property damage, which includes the foundations and bins, is the work of Gateway and thus excluded

under the policy. To support these assertions, Western National, along with the circuit court, relies almost exclusively on the report placed into the record by Western National through affidavit of counsel. The report identified a variety of structural problems with the project. It determined that "no engineering was completed for the project;" there was inadequate rebar in the footings, perimeter foundation, foundation walls, and tunnel walls; and the bin footings were too small resulting in excessive soil pressure.

[¶13.]     Gateway asserts that the circuit court improperly determined the ultimate cause of the bin failure when it relied on the expert report and found: "It is clear that the ultimate cause for the failure of the bins was the result of a lack of proper engineering." Prior to the report being placed into the record, Gateway asserted that B & B Excavation and BMS were partially responsible for the failure of the bins. The expert report itself references an "NTI report" and disagrees with the conclusions in the "NTI report," indicating that these issues are disputed.＊

---

＊     Furthermore, although the parties have not raised the issue, we question the method by which the expert report was placed in the record and considered by the court. It was attached to an affidavit of Western National's attorney. SDCL 15-6-56(e) provides:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in § 15-6-56, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in § 15-6-56, must set forth

(continued . . .)

Accordingly, we agree that the court erred in its grant of summary judgment on Exclusion l. Summary judgment on the "your work" exclusion is premature when underlying liability has not been determined and Gateway has disputed whether it was solely responsible for the ultimate cause of the damages claimed by Dakota Mill or whether the work of B & B or BMS could have caused some of the damage. Those facts are material in determining whether the exclusion applies or whether the exception to the exclusion applies because work was done by a subcontractor.

[¶14.]     The disputed material facts that the court resolved in its memorandum opinion also precluded summary judgment on the remaining exclusions that

---

(. . . continued)

> specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

We have explained:

> an attorney's affidavit is governed by the same rules of admissibility in regard to personal knowledge and competency…. Furthermore, an attorney's affidavit should not be utilized for summary judgment decisions unless the testimony therefrom would be admissible at trial…. [T]he affidavits must not … give evidence regarding matters that would be questions of fact.

*Andrushchenko v. Silchuk*, 2008 S.D. 8, ¶ 11, 744 N.W.2d 850, 855 (citing *Maryland Cas. Co. v. Delzer*, 283 N.W.2d 244, 249 (S.D. 1979)); *see also Haberer v. First Bank of S.D.*, 429 N.W.2d 62, 65-66 (S.D. 1988). In accordance with that rule, we have upheld a circuit court's refusal to consider copies of police reports introduced through the affidavit of an attorney. *Andrushchenko*, 2008 S.D. 8, ¶ 12, 744 N.W.2d at 855. We held that the party attempting to introduce the reports through an affidavit failed to lay the proper foundation to establish admissibility of the reports. *Id.* ¶ 11. This supplemental attorney affidavit with a report attached was submitted after the hearing on the summary judgment motion, and it is unclear whether Gateway had an opportunity to submit factual responses.

Western National claims are applicable in this case. The "professional services" exclusion was added as a policy endorsement and provides:

> With respect to any professional services shown in the Schedule, the following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury and Property Damage Liability and Paragraph 2., Exclusions of Section I – Coverage B – Personal and Advertising Injury Liability: This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" due to the rendering of or failure to render any professional service.

[The Schedule states "ALL LOCATIONS".]

Determination that this exclusion applies necessarily requires a determination that some or all of the damages at issue arose out of the "rendering of or failure to render any professional service." Western National relies on the expert report to assert that this exclusion applies because the lack of engineering is the ultimate cause of the damages claimed by Dakota Mill. Whether engineering is the ultimate cause of the damages is in dispute, and therefore summary judgment is premature on the "professional services" exclusion.

[¶15.]     Lastly, through notice of review, Western National has asked us to determine that the "impaired property" exclusion bars coverage for damage to the pre-existing leg and support tower. Western National asserts that this exclusion applies because the leg and support tower were merely incorporated into Gateway's allegedly defective work. The exclusion precludes coverage for:

> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
>> (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
>>
>> (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

> This exclusion does not apply to the loss of use of other property arising out of *sudden and accidental physical injury* to "your product" or "your work" after it has been put to its intended use.

(Emphasis added.) Impaired property is defined as:

> "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:
>
> > a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
> >
> > b. You have failed to fulfill the terms of a contract or agreement; if such property can be restored to use by:
> >
> > a. The repair, replacement, adjustment or removal of "your product" or "your work"; or
> >
> > b. Your fulfilling the terms of the contract or agreement.

[¶16.] Very little evidence relevant to this exclusion is included in the record before us. Western National contends that the pre-existing leg and support tower could not be used after the bins began to tip and the "property damage arose after the grain handling system was put to its intended use." However, it is unclear what damage the parties are discussing and whether Dakota Mill is claiming any damages relevant to this exclusion. *See Insurance Coverage of Construction Disputes* § 26:10 (2d ed. 2016) ("[T]he exclusion cannot apply in the absence of a loss of use claim.") Furthermore, the circuit court found that the exclusion did not apply because of the "sudden and accidental" physical injury to Gateway's work after it had been put to its intended use. The court found that the bins began to move as soon as they were loaded. On appeal, the parties dispute whether there was a "sudden and accidental physical injury," as provided in the "impaired property"

exclusion.  If the physical injury is "sudden and accidental," then the exclusion may not apply.  In the summary judgment proceedings below, there is conflicting evidence.  The expert report that Western National relies on to establish causation indicates that the bins began to fail immediately when full, but Plaintiff's statement of undisputed material facts states that the bins began to tip "[o]ver the course of a few days."  Gateway responded "undisputed" to that pleaded fact.  Because there are outstanding disputes of material fact on causation, damage, and time, we are not in a position to determine whether this exclusion applies.

## Conclusion

[¶17.]      The circuit court resolved disputed material facts when it granted summary judgment in favor of Western National Mutual Insurance Company.  Those disputed material facts precluded summary judgment in this declaratory action.  We reverse the circuit court's grant of summary judgment.

[¶18.]      GILBERTSON, Chief Justice, and KERN, Justice, and FLEMMER, and BROWN, Circuit Court Judges, concur.

[¶19.]      FLEMMER, Circuit Court Judge, sitting for ZINTER, Justice, disqualified.

[¶20.]      BROWN, Circuit Court Judge, sitting for WILBUR, Justice, disqualified.