[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-10478
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cv-20484-FAM


WITKIN DESIGN GROUP, INC.,

                                                        Plaintiff - Appellant,

versus

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA,

                                                        Defendant - Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(October 19, 2017)

Before TJOFLAT, MARCUS, and FAY, Circuit Judges.

PER CURIAM:

Witkin Design Group, Inc. ("Witkin") appeals the decision of the District Court, which held that Travelers Property Casualty Company of America ("Travelers") need not defend or indemnify a wrongful death action against Witkin. We hold that the District Court did not err in determining that the professional services exclusion applies and covers the allegations against Witkin in the wrongful death action. Therefore, Travelers need neither defend nor indemnify Witkin. We affirm.

## I.

The present case arises out of a traffic accident at an intersection in a residential community known as "Vizcaya" located in Broward County, Florida. The accident caused the death of an eleven-year-old boy, Jose A. Scott. The estate of Scott brought a wrongful death action against multiple defendants, including Witkin.[1] The wrongful death complaint lists Witkin as the "landscape architect" for Vizcaya.  Witkin seems to have designed and constructed the intersection where the accident occurred, tasks which Witkin allegedly performed in a negligent manner. *See Id.* at 154–56. It is unclear from the record when Witkin constructed

---

[1] Scott's estate also brought claims against Lakisha D. Coney (the driver of the car), Kevin S. Coney (the owner of the car), Vizcaya Community Association (the residential community where the accident took place), Calvin Giordano & Associates, Inc. (a company who helped engineer, survey, and plan Vizcaya), Southern Homes of Broward IV, LLC (the owner and developer for Vizcaya), Yates & Company, LLC. (the development consultant for Vizcaya), BGA Design Group (the architect for Vizcaya), and Keith & Ballbe, Inc. (the civil engineers for Vizcaya).

the intersection and what, if anything, Witkin did other than design and build the intersection.

In response to the wrongful death action, Witkin wanted its insurer, Travelers, to either defend or indemnify the claim. Witkin has two insurance policies with Travelers.  The first is a Commercial General Liability Policy ("CGL Policy").  The second is a Commercial Excess Liability Insurance Policy ("Umbrella Policy").  Both policies provide coverage for products-completed operations ("PCO") claims, with the limitations for such claims listed on the declarations pages.[2]  The policies also both contain professional service exclusions for any "[b]odily injury or property damage arising out of the rendering of or failure to render any professional services."  The policies define "professional services" as "any service requiring specialized skill or training."

Travelers refused to defend or indemnify the wrongful death action. It based this refusal the professional services exclusions, arguing that the designing and construction of the intersection constituted a professional service.  Displeased with this, Witkin filed a declaratory judgment action in state court seeking a declaration that Travelers must defend or indemnify the wrongful death action under the insurance policies. Travelers removed to federal district court. The parties filed cross-motions for summary judgment. After reviewing the motions, a Magistrate

---

[2] The CGL Policy limits PCO coverage to $2,000,000. The Umbrella Policy limits PCO coverage to $1,000,000.

3

Judge determined that the design and construction of the intersection constituted a professional service under the policies, and thus that Travelers did not have a duty to defend or indemnify the suit. The District Court adopted the Magistrate Judge's determination and dismissed the case. Witkin appealed.

## II.

We review the grant or denial of a motion for summary judgment on a *de novo* basis. *Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1307 (11th Cir. 2012).  In reviewing summary judgments, we draw all reasonable inferences in favor of the nonmoving party. *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1321 (11th Cir. 2014).  We also review *de novo* the interpretation of an insurance contract. *Vector Products, Inc. v. Hartford Fire Ins. Co.*, 397 F.3d 1316, 1318 (11th Cir. 2005) (quoting *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1515 (11th Cir. 1997)). Because this case arises as a diversity action, we apply Florida law. *See Erie Railroad v. Tompkins*, 304 U.S. 64, 78 (1938); *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496 (1941); *Keller v. Miami Herald Publishing Co.*, 778 F. 2d 711, 714–15 (11th Cir. 1985).

Under Florida law, courts construe insurance contracts on their plain meaning. *Garcia v. Fed. Ins. Co.*, 969 So. 2d 288, 291–92 (Fla. 2007) (quotations omitted). However, insurance policies that are "ambiguous or otherwise susceptible to more than one meaning must be construed in favor of the insured."

*State Farm Mut. Auto. Ins. Co. v. Pridgen*, 498 So. 2d 1245, 1248 (Fla. 1986). In determining whether ambiguities exist, courts must constrain themselves to the language in the agreement; they cannot consider the subjective intent of the parties. *See Harrington v. Citizens Prop. Ins. Corp.*, 54 So. 3d 999, 1001–02 (Fla. 4th DCA 2010) (citing *State Farm Fire & Cas. Ins. Co. v. Deni Assocs. of Fla., Inc.*, 678 So. 2d 397, 403 (Fla. 4th DCA 1996)). Lastly, in carrying out this analysis, Florida courts must "read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000).

The insurance policies are not ambiguous. As the Magistrate Judge pointed out, the PCO coverage does not exist as a separate policy. It forms part of the CGL and Umbrella Agreements. Thus, the professional services exclusions apply to the PCO claims.

The CGL and Umbrella policies contain nearly identical language in their respective professional service exclusions. They both exclude bodily injury or property damage "arising out of the rendering of or failure to render any 'professional service.'" Both policies define professional services to mean "any service requiring specialized skill or training." They then provide the following examples of a professional service:

a. Preparation, approval, provision of or failure to prepare, approve, or provide any map, shop drawing, opinion, report, survey, field order, change order, design, drawing, specification, recommendation, warning, permit application, payment request, manual or inspection;

b. Supervision, inspection, quality control, architectural, engineering or surveying activity or service, job site safety, construction contracting, construction administration, construction management, computer consulting or design, software development or programming service, or a selection of a contractor or subcontractor; or

c. Monitoring, testing, or sampling service necessary to perform any of the services included in a. or b. above.

These provisions are clear. The professional service exclusion applies to any service requiring specialized skill or training, such as the services listed above. There is no "genuine inconsistency, uncertainty, or ambiguity" as to what counts as a professional service. *Taurus Holdings, Inc. v. U.S. Fidelity and Guar. Co.*, 913 So. 2d 528, 532 (2005) (quotation omitted).

The conduct of Witkin in designing and constructing the intersection falls squarely within the professional services exclusions. Presumably, the developer of Vizcaya – Southern Homes of Broward IV, LLC ("Southern Homes") – hired Witkin to design and construct the intersection at S.W. 135th Terrace and 136th Avenue in Broward County.[3] Such architecture and construction services require

---

[3] It is Witkin's negligence in designing and constructing the intersection that would render Southern Homes liable. The record does not identify who hired Witkin for its professional services. We assume that the developer, Southern Homes, employed the firm.

"specialized skill or training," and thus qualify as professional services. Thus, the professional services exclusions apply, and Travelers need not defend or indemnify the wrongful death action.

**AFFIRMED.**