# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-1121

_____

Sioux Steel Company, a South Dakota corporation

*Plaintiff - Appellant*

v.

Insurance Company of the State of Pennsylvania

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of South Dakota - Southern

_____

Submitted: October 24, 2024
Filed: February 6, 2025

_____

Before LOKEN, SMITH, and GRASZ, Circuit Judges.

_____

SMITH, Circuit Judge.

Sioux Steel Company (Sioux Steel) appeals the district court's[1] grant of summary judgment to Insurance Company of the State of Pennsylvania (ISOP) on Sioux Steel's claims for breach of contract and insurance bad faith. ISOP denied

---

[1]The Honorable Karen Schreier, United States District Judge for the District of South Dakota.

coverage under a professional services exclusion in its insurance policy after a grain storage bin designed by Sioux Steel catastrophically failed in Mexico. We affirm.

## I. *Background*

Sioux Steel is a South Dakota corporation that designs and manufactures commercial grain storage systems. In 2012, Sioux Steel directed its employee Chad Kramer, a licensed professional engineer in South Dakota, to design a new line of hopper bins in various sizes. In designing the hopper bins, Kramer used his engineering skills, consulted technical engineering reference materials, made engineering calculations, and created drawings and specifications.

In addition to Kramer's services, Sioux Steel also retained KC Engineering to review Kramer's design. KC Engineering engineers Jason O'Mara and Derek Matthies conducted a structural engineering analysis and design review of the new hopper bins. They approved the drawings and specifications. After approval by KC Engineering, Sioux Steel finalized plans for manufacturing the hopper bins. It then marketed and sold those bins as generic products to the general public.

In March 2014, Sioux Steel entered into a distribution agreement with Molinos Azteca (Molinos) to distribute its products in Mexico. In November 2014, Molinos sold one of the hopper bins designed and manufactured by Sioux Steel to Agropecuaria el Avion (Avion) for handling, storage, and delivery of soybean meal. Molinos installed the hopper bin at Avion's facility in Tepic, Mexico. On December 23, 2014, Sioux Steel purchased a Foreign Commercial General Liability insurance policy from ISOP covering December 31, 2014, to December 31, 2015. The policy included coverage for Mexico. Relevant to this case, it contained the following professional services exclusion (PSE):

> This insurance does not apply to bodily injury, property damage or personal and advertising injury arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

Professional services include:

1.    The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

2.    Supervisory, inspection, architectural or engineering activities.

R. Doc. 67-1, at 33 (emphases omitted).

On February 2, 2015, the hopper bin sold to Avion catastrophically failed at Avion's facility in Mexico. Two Avion employees were emptying the bin's contents when the vertical seam failed and released approximately 750 tons of soybean meal and metal debris. The accident caused two fatalities and significant property damage. Sioux Steel notified ISOP of the incident within a week. ISOP retained two engineering firms to investigate the loss, and both concluded that the loss was caused by engineering defects. It is undisputed that the accident was not caused by a construction defect because the bin was erected on site according to the drawing and specifications. On September 15, 2015, based on the engineering reports, ISOP denied coverage, citing the professional liability exclusion.

Sioux Steel then engaged in settlement negotiations with its customer Avion without ISOP's involvement. Sioux Steel reached a settlement agreement with Avion in March 2016. Consequently, Avion never sued Sioux Steel. After settling with Avion, Sioux Steel then filed this diversity action against ISOP in federal court, alleging breach of contract and bad faith for denying coverage.

As litigation proceeded, Lea Austin, a senior underwriter for ISOP's parent company, AIG Property Casualty, responded to an inquiry from Sioux Steel's insurance broker regarding the professional liability exclusion. Austin stated in an email that "the intent is to exclude liability related to professional services offered for a fee unrelated to the development and sales of [Sioux Steel's] own products." R. Doc. 72-34, at 2. In her later deposition, Austin testified that she was not the underwriter for the specific policy at issue, she had not reviewed the exclusion's

language before sending the email, and her email provided only one potential interpretation of the exclusion's intent, not an exhaustive list.

Following discovery, the district court granted summary judgment to ISOP, finding the professional liability exclusion unambiguous and applicable to preclude coverage. The court also dismissed Sioux Steel's claims for bad faith, punitive damages, and attorney's fees. Sioux Steel now appeals.

## II. *Discussion*

"We review de novo the district court's resolution of cross-motions for summary judgment, 'viewing the evidence in the light most favorable to the nonmoving party and giving the nonmoving party the benefit of all reasonable inferences.'" *Dallas v. Am. Gen. Life & Accident Ins. Co.*, 709 F.3d 734, 736 (8th Cir. 2013) (quoting *Crawford v. Van Buren Cnty.*, 678 F.3d 666, 669 (8th Cir. 2012)). "In insurance coverage actions involving diversity of citizenship, state law controls our analysis of the insurance policy." *Geerdes v. W. Bend Mut. Ins. Co.*, 70 F.4th 1125, 1127 (8th Cir. 2023) (quoting *Nat'l Am. Ins. Co. v. W & G, Inc.*, 439 F.3d 943, 945 (8th Cir. 2006)). The parties agree that the court should apply South Dakota law when interpreting this insurance policy.

Under South Dakota law, "[t]he existence of the rights and obligations of parties to an insurance contract are determined by the language of the contract, which must be construed according to the plain meaning of its terms." *W. Nat'l Mut. Ins. Co. v. Gateway Bldg. Sys., Inc.*, 887 N.W.2d 887, 890 (S.D. 2016) (quoting *Swenson v. Auto Owners Ins. Co.*, 831 N.W.2d 402, 407 (S.D. 2013)). Even though "the language in insurance contracts is to be construed liberally in favor of the insured and strictly against an insurer, that rule of construction applies only when the language of the contract is ambiguous." *St. Paul Fire & Marine Ins. Co. v. Schilling*, 520 N.W.2d 884, 887 (S.D. 1994). "An insurance contract's language must be construed according to its plain and ordinary meaning and a court cannot make a forced construction or a new contract for the parties." *Id*. "The fact that the parties differ as to the contract's interpretation does not create an ambiguity." *Ass Kickin*

*Ranch, LLC v. N. Star Mut. Ins. Co.*, 822 N.W.2d 724, 727 (S.D. 2012) (quoting *Zochert v. Nat'l Farmers Union Prop. & Cas. Co.*, 576 N.W.2d 531, 532 (S.D. 1998)).

### A. *Breach of Contract*

Sioux Steel must prove "(1) an enforceable promise; (2) a breach of the promise; and, (3) resulting damages" to establish its breach-of-contract claim against ISOP for its alleged failure to defend and to indemnify. *Bowes Constr., Inc. v. S.D. Dep't of Transp.*, 793 N.W.2d 36, 43 (S.D. 2010). We first address the duty to indemnify.

"When an insurer invokes a contract exclusion to disallow coverage, the insurer has the burden of proving that the exclusion applies." *W. Agric. Ins. Co. v. Arbab-Azzein*, 940 N.W.2d 865, 868 (S.D. 2020) (internal quotation marks omitted). ISOP argues that the PSE applies and thus it did not breach its duty to indemnify under the insurance contract.

Sioux Steel argues that the contract language is ambiguous, and if so, should be construed against ISOP. Such a construction would prevent the PSE from excluding coverage. Sioux Steel argues that the district court improperly applied South Dakota's parol evidence rule, barring introduction of Austin's email that would purportedly introduce an ambiguity. However, the unambiguous contract language obviated consideration of extrinsic evidence.

Sioux Steel argues that Austin's email can be introduced as a latent ambiguity. Sioux Steel contends that South Dakota has not addressed the use of extrinsic evidence to determine if a latent ambiguity exists in the contract.[2] In cases "where

---

[2]ISOP argues that Sioux Steel did not raise the argument below and cannot do so now. However, Sioux Steel, in an alternative argument, argued that the contract was ambiguous, which is enough to hear the issue now on appeal. *See PCTV Gold, Inc. v. SpeedNet, LLC*, 508 F.3d 1137, 1144 n.5 (8th Cir. 2007) (allowing an estoppel argument to be heard on appeal when "the issue is encompassed in a party's more

state courts have not decided a particular substantive legal issue of relevance, we must try to predict how the state's highest court would do so and decide the case accordingly." *Lindholm v. BMW of N. Am., LLC*, 862 F.3d 648, 651 (8th Cir. 2017). Sioux Steel cites numerous persuasive authorities suggesting that extrinsic evidence can be considered to determine whether a latent ambiguity exists. However, South Dakota has adequately addressed this issue in *AFSCME Local 1922 v. State*, 444 N.W.2d 10, 12 (S.D. 1989).

In *AFSCME Local 1922*, Local 1922 argued that the intent of the parties, determined by past history, practice and usage, should be considered when interpreting their union contract. *Id.* at 12. The Supreme Court of South Dakota, however, rejected that argument:

> For this proposition, union cites *MEA/AFSCME Local 519 v. City of Sioux Falls*, 423 N.W.2d 164 (S.D.1988). Union has misconstrued MEA/AFSCME.
>
> In *MEA/AFSCME*, this court stated: "In interpreting collective bargaining agreements, it is often necessary to look beyond the four corners of the contract itself . . ." *MEA/AFSCME*, *citing International Union v. White Motor Corp.*, 505 F.2d 1193, 1197 (8th Cir.1974). This court did not hold that the language of the collective bargaining agreement is meaningless. Nor did we hold that in each instance one leaves the written word aside to go beyond the four corners of the contract. Specifically, we did say that if the language is ambiguous, and does not speak to a subject it would normally be expected to, then the court *may* go beyond the four corners of the contract.
>
> Other jurisdictions have recognized this rule. When a latent ambiguity in the terms or language of an agreement exists, extrinsic sources such as bargaining history and past practices may be

---

general argument and no new evidence is presented on appeal" and the party asserting estoppel "alleged the facts on which its estoppel argument is based").

-6-

considered. Where a contract is not clear on its face, extrinsic evidence may be admitted. . . .

.   .   .

When a contract is clear and unambiguous and speaks to a subject it is expected to, there is no need to go beyond the four corners of the contract. Thus, we will look to the language of the contract and consider union's argument.

*Id*. (footnote omitted). *AFSCME Local 1922* holds that a court may go beyond the four corners of the contract only when "the language is ambiguous, and does not speak to a subject it would normally be expected to" and "[w]hen a latent ambiguity *in the terms or language of an agreement* exists." *Id*. (emphasis added). Based on its precedent, we conclude that the Supreme Court of South Dakota would not consider extrinsic evidence to determine if an ambiguity exists. Extrinsic evidence would be considered only if the ambiguity already exists based upon the language of the contract. *See Berkley Reg'l Specialty Ins. Co. v. Dowling Spray Serv.*, 864 N.W.2d 505, 512 (S.D. 2015) (holding that the district court improperly considered testimony of an employee to declare intent of coverage under the policy because the plain and ordinary meaning of the policy was unambiguous).

Because extrinsic evidence cannot be considered to determine if an ambiguity exists, the language of the contract controls. The relevant disputed language in this case stems from the phrase "the rendering of or failure to render." R. Doc. 67-1 at 33. Sioux Steel does not dispute that Chad Kramer and KC Engineering were engaged in professional engineering services in the design of the product. Further, Sioux Steel does not dispute that an engineering error was the cause of the accident. The company focuses on the meaning of the word "render."

Black's Law Dictionary defines "render" as "[t]o transmit or deliver." *Render*, Black's Law Dictionary (11th ed. 2019). Merriam-Webster's Unabridged Dictionary defines "render" as "to furnish for consideration" or "to hand over to another (as the intended recipient)." *Render, Merriam-Webster's Unabridged Dictionary*,

https://unabridged.merriam-webster.com/unabridged/render (last visited January 27, 2025). Sioux Steel argues that "render" must mean to render to a third party, as opposed to an internal professional service in the design of its own product. "Effectively, Sioux Steel argues that the court should add the phrase 'to the injured party' in between the words 'render' and 'any' in the exclusion . . . . But 'the terms of an unambiguous insurance policy cannot be enlarged or diminished by judicial construction.'" R. Doc. 96, at 17-18 (quoting *Berkley*, 860 N.W.2d at 260).

Sioux Steel bases their argument on the absence of reported cases, in this circuit or otherwise, holding that such a policy exclusion should apply to product manufacturers. Sioux Steel contends that such a policy exclusion should only apply to professional services provided directly to a third party. Here, the absence of precedent is insufficient to establish legal error by the district court. Just as there are no cases applying the professional engineering exclusion to product manufacturers, Sioux Steel identifies no cases holding that such an exclusion cannot apply to product manufacturers. Therefore, this case turns on the policy's unambiguous language.

Sioux Steel argues that the two cases the district court relied on do not address its argument. *See Gateway*, 887 N.W.2d at 892; *W. Nat'l Ins. Co., v. TSP, Inc.*, 904 N.W.2d 52 (S.D. 2017), *overruled on other grounds, Sentell v. Farm Mut. Ins. Co. of Lincoln Cnty.*, 956 N.W.2d 826 (S.D. 2021). Sioux Steel contends that the issue turns on whether the professional services were rendered by the insured to a third party or to the insured in the design of a manufactured product.

In *Gateway*, a mill company sued Gateway for negligence and breach of contract after grain bins that Gateway constructed became unstable. 887 N.W.2d at 889. Gateway's insurance company argued that a professional liability exclusion in their policy barred coverage for the claim. *Id.* at 892. The South Dakota Supreme Court, however, rejected this argument. *Id.* The court noted factual disputes about whether engineering services were the ultimate cause of the bin failure. *Id.* The court

held that summary judgment based on PSE was premature given these factual disputes. *Id*.

In *TSP*, the court held that a similar professional liability exclusion barred coverage for a lawsuit against a land surveyor because a professional service (land surveying) indisputably caused the alleged property damage. 904 N.W.2d 59. The court granted summary judgment to the insurer because there was no dispute that professional services caused the incurred damages. *Id*. at 61. The district court relied on *Gateway* and *TSP* for the proposition that the ultimate inquiry for these types of policy exclusions is whether the professional service caused the damage.

*Assurance Co. of America v. American Registory of Radiologic Technologists* (*ARRT*), 64 F. Supp. 3d 1289, 1292 (D. Minn. 2014), although only persuasive authority, provides helpful reasoning clarifying the distinction between rendering professional services internally to a company versus to third parties while employed for the company. In *ARRT*, a credentialed cardiovascular technician stole syringes filled with fentanyl from the hospital where he worked, injected himself, then replaced them with saline solution. *Id*. at 1291. The technician carried Hepatitis C at the time. *Id*. His actions transmitted Hepatitis C to some of the hospital's patients. *Id*. at 1291–92. Those patients sued ARRT for improper credentialing of the technician. *Id*. at 1292. ARRT's insurer denied coverage under the PSE. *Id*. at 1295. The language of the exclusion was nearly identical to the one in the instant case. *See id.* at 1294. ARRT argued that the exclusion should not apply because ARRT did not provide the credentialing professional services to the injured party. *Id*. at 1298. Rather, it provided the credentials to the technician in the form of his credential. *Id*. The district court rejected that argument, concluding that the policy language did not require a direct relationship between the insured and the claimant. *Id*. at 1301. ARRT's effort to defeat the exclusion failed. *Id*. at 1303.

Sioux Steel argues that *ARRT* speaks to a different issue than the one in this case. It claims that the professional services in *ARRT* were still rendered externally to a third party. We disagree. In *ARRT*, ARRT's professional service provided an

occupational credential for a medical technician. *Id*. at 1297–98. The technician caused injury to others using the credential provided by ARRT. *Id*. at 1303. Essentially, ARRT rendered professional training services, and the injury arguably arose out of the faulty professional service. Similarly, Sioux Steel rendered faulty professional design services, and the injury arose out of the faulty service.

Other persuasive authority also highlights the fact that direct privity is not required. *See, e.g.*, *Witkin Design Grp., Inc. v. Travelers Prop. Cas. Co. of Am.*, 712 F. App'x 894, 895 (11th Cir. 2017) (unpublished per curiam) (holding PSE applied to insurer's denial of coverage for a wrongful death claim against a landscape architect whose negligent intersection design, created while working for a developer, caused a boy's death); *Hurst-Rosche Eng'rs, Inc. v. Com. Union Ins. Co.*, 51 F.3d 1336, 1343–45 (7th Cir. 1995) (finding identical PSE applied to the general contractor's libel and tortious interference claims against the insured, who was hired by the housing authority, not the contractor, to submit weekly reports); *Harad v. Aetna Cas. & Sur. Co.*, 839 F.2d 979, 984 (3d Cir. 1988) (finding the exclusion for professional services rendered applied, as there was no explicit privity requirement, when attorney was being sued for malicious prosecution by the defendant in that case, but attorney only had privity with his client).

Sioux Steel primarily relies on *Leverence v. United States Fidelity & Guarantee*, 462 N.W.2d 218 (Wis. Ct. App. 1990), *overruled on other grounds by Wenke v. Gehl Co.*, 682 N.W.2d 405 (Wis. 2004). In *Leverence*, a manufactured homes company purchased a liability policy containing a PSE. *Id*. at 226. Leverence's homes proved defective as indicated by excessive moisture. *Id*. at 222. The plaintiff homeowners alleged that the company's design defect, inappropriately selected building materials, and faulty construction practices caused the excess moisture problems. *Id*. The *Leverence* court rejected the insurer's argument that the PSE applied. *Id*. at 226. In doing so, it reasoned that "to break down Tri–State's activities into separate components, and then bar claims arising out of its manufactured product because intellectual skills were employed would go beyond the normal rules of contract interpretation." *Id*. at 227. The *Leverence* court declined

to apply the exclusion because the lawsuit alleged both professional services and non-professional services caused the excessive moisture problem. *Id*. Like *Gateway*, it was disputed whether professional services were the actual cause of the harm alleged in the lawsuit. *Id*.

*Leverence* does not support Sioux Steel's claim. Sioux Steel argues that the exclusion only applies if the rendering of the professional services is directly to a third party. The cited precedents do not support this proposition. The liability that the plaintiff claims "arises out of the rendering of professional services"—Kramer's and KC Engineering's faulty design—which falls within the language of the exclusion. The language of the contract is not ambiguous. There is no requirement within the contract that the professional services be rendered directly to a third party rather than indirectly through the design of a faulty product. Thus, ISOP did not breach their duty to indemnify Sioux Steel under the terms of the insurance contract. The policy exclusion expressly excluded the claim at issue here.

Sioux Steel alleges that ISOP also breached its duty to defend. "An insurer's duty to defend and its duty to indemnify are separate and independent duties." *N. Star Mut. Ins. v. Korzan*, 873 N.W.2d 57, 61 (S.D. 2015). "The duty to defend arises prior to the completion of litigation, and therefore insurers are required to meet their defense obligation before the scope of the insured's liability has been determined." *Lowery Constr. & Concrete, LLC v. Owners Ins. Co.*, 901 N.W.2d 481, 484 (S.D. 2017) (quoting 14 Steven Plitt et al., *Couch on Insurance* § 200:3 (3d ed.)). "It is well settled that a duty to defend does not exist when an insurer shows 'the claim clearly falls outside of policy coverage.'" *Geidel v. De Smet Farm Mut. Ins. Co. of S.D.*, 926 N.W.2d 478, 484 (S.D. 2019) (emphasis omitted) (quoting *N. Star Mut. Ins. Co. v. Kneen*, 484 N.W.2d 908, 912 (S.D. 1992)).

ISOP's policy states: "We will have the right and duty to defend the insured against any suit seeking those damages. However, we will have no duty to defend the insured against any suit seeking damages for bodily injury or property damage

-11-

to which this insurance does not apply." R. Doc. 67-1, at 8 (emphasis omitted). "Suit" is defined as:

> [A] civil proceeding in which damages because of bodily injury, property damage or personal and advertising injury to which this insurance applies are alleged. Suit includes:
>
> > a. an arbitration proceeding in which such damages are claimed and to which the insured must submit, or does submit with our consent; and
> >
> > b. any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

R. Doc. 67-1, at 7 (emphasis omitted). This language raises several hurdles for Sioux Steel. First, Avion never filed a civil proceeding against Sioux Steel. Second, the informal settlement negotiations between Sioux and Avion did not constitute an arbitration proceeding nor any other alternative dispute resolution process. Furthermore, even if the informal settlement negotiations constituted an alternative dispute resolution, ISOP was not aware of and did not consent to those negotiations. Irrespective of the policy exclusion's application, ISOP did not breach the policy's duty to defend. Accordingly, Sioux Steel is not entitled to attorney's fees. *See* S.D. Codified Laws § 58-12-3 (stating that insured may recover attorney's fees only if insurer breaches contract by denial of coverage that was "vexatious or without reasonable cause").

## B. *Insurance Bad Faith*

Sioux Steel also brings a claim for insurance bad faith, both first-party and third-party, against ISOP. Bad faith must be premised upon an insurer's "wrongful denial of benefits." *Hein v. Acuity*, 731 N.W.2d 231, 237 (S.D. 2007); *see also Julson v. Federated Mut. Ins. Co.*, 562 N.W.2d 117, 119–20 (S.D. 1997) (explaining that an insurer will be found liable for bad faith only when it "intentionally denie[s] . . . a claim without a reasonable basis") (internal quotation marks omitted). Because we

hold that the policy exclusion applies to Sioux Steel's claim, we also hold that ISOP did not intentionally deny Sioux Steel's claim without a reasonable basis.

## III. *Conclusion*

Accordingly, the judgment of the district court is affirmed.

_____